(A. R. D. 69)

RAYLITE TRADING CO., INC., ET AL. *v.* UNITED STATES

Entry No. 764188, etc.

Second Division, Appellate Term

(Decided June 15, 1956)

Sharretts, Paley & Carter (*Howard Clare Carter* of counsel); *Benjamin A. Levett,* associate counsel; for the appellants.

*George Cochran Doub,* Assistant Attorney General (*William J. Vitale,* trial attorney), for the appellee.

Before FORD, EKWALL, and WILSON, Judges

FORD, Judge: This is an application for review filed under the provisions of title 28 U. S. C., section 2636 (a), seeking a reversal of the decision and judgment of the trial court reported in *Raylite Trading Co., Inc., et al.* v. *United States,* 32 Cust. Ct. 589, Reap. Dec. 8292. The merchandise involved in this case consists of electric-light bulbs exported from Japan. There is no contention between the parties with reference to the values found by the appraiser under section 402 of the Tariff Act of 1930. However, after finding values for this merchandise under section 402 of the Tariff Act of 1930, the appraiser made an appraisement report under the Antidumping Act of 1921, in which he found that the unit purchase price was less than the cost of production. It is this phase of the case with which we are here concerned.

At the hearing of this case before the trial court, appellants herein offered the testimony of four witnesses and several documentary exhibits, which were properly marked. The defendant below offered three special agent's reports, which were marked exhibits 7, 8, and 9.

It was conceded in the court below that the involved, or similar merchandise, was not sold or freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for home consumption, as provided for in section 205 of the said anti-dumping act. Counsel for the appellants herein contended in the court below, and contends here, that it established a foreign market value for the involved merchandise under said section by showing that the involved or similar merchandise was freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to countries other than the United States, as specifically provided for under said section 205.

The trial court disagreed with the contention of counsel for the appellants herein, disposing of such contention in the following language:

\* \* \* While it can be said, on the basis of the present record, that deliveries of electric-light bulbs, such as or similar to the articles in question, were made from exporters in Japan to one company in England and several companies in Canada, there is no showing herein that the prices for the electric-light bulbs covered by such shipments were the prices at the time of exportation of the present merchandise at which such or similar merchandise was sold or freely offered for sale *to all purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade*, for exportation to countries other than the United States, as required by the statute, section 205, *supra*. In other words, plaintiffs have failed to establish the several elements embodied in the statutory definition of foreign market value under the Antidumping Act of 1921, as set forth in the *J. H. Cottmann & Co.* case, *supra*.

With the above finding and conclusion of the trial court, we are in agreement, but would add to the authorities cited in support of such finding and conclusion the case of *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495. It is quite clear to us that the present record is not sufficient to establish that the quantities in which the merchandise was sold or freely offered for sale to countries other than the United States were usual wholesale quantities within the pronouncements contained in the *Brooks* case, *supra*.

The trial court concluded its decision as follows:

Reappraisement 138345–A, so far as it relates to items C–9¼ and C–7½, and reappraisement 138633–A, as it relates to item C–7½, are dismissed. [These appeals as to the specified items were abandoned.] As to the remaining items covered by these five appeals for reappraisement which were consolidated at the time of trial, I find the cost of production and the purchase price of each of the

articles in question to be as found by the appraiser. Judgment will be rendered accordingly.

Counsel for the appellants herein contends that the cost of production given by the special agent in the three exhibits, 7, 8, and 9, was sufficient to overcome the presumption in favor of the cost of production reported by the appraiser and to establish a cost of production lower than the purchase price as to the majority of the items here involved, and, as to the remaining items, to materially reduce the cost of production as found by the appraiser.

It is apparent from examination of the decision of the trial court that it gave no consideration to the evidence with reference to the cost of production submitted by the special agent. Exhibit 7 contains the following statement:

> There being no sales of the above merchandise to the domestic market or to countries other than the United States, the firm's cost of production on the various bulbs was secured as follows:

Following the above is the cost of production, reported by the special agent. A similar situation obtains with reference to exhibits 8 and 9.

The question of the weight to be given to the cost-of-production figures furnished by the special agent was not raised or discussed before the trial court. It is our view that, while this specific question was not raised in the court below, the court should have weighed this evidence, since it was before it at the time as a part of the official evidence. In failing to do so, we feel that the trial court was in error.

The following is quoted from the record when this case was argued before this division:

JUDGE FORD: If I understand Mr. Carter right, the agent's report is at variance with the Government?

MR. VITALE: I doubt that. As a matter of fact, in the court below the importer failed to supply any cost of production figures at all.

JUDGE FORD: I am talking about Mr. Scott's report.

MR. VITALE: If there is anything in there to upset our claims, we would be subject to that, but I am very sure there is nothing in there in conflict with what we claim.

       *        *        *        *        *        *        *

JUDGE FORD: All right. Let me ask you, did I understand you correctly to say that you would be satisfied with the prices shown under cost of production as shown on the Government agent's report? You have no objection to that?

MR. VITALE: If they are in conflict with what we have, if there is nothing to support our values, I think they would have some effect on the cost of production but I don't think that is so.

In a memorandum filed at the request of the court by counsel for appellants herein on March 15, 1956, it is made clear that there is a variance between the cost of production, as found by the Government

in its appraisement of the merchandise, and the cost of production, as reported by Special Agent Scott in exhibits 7, 8, and 9. Since this evidence has not been considered and weighed by the trial court, there is nothing before us on this point for review. To the end that this evidence may be considered and weighed by the trial court and that findings of fact and conclusions of law be made thereon, the decision and judgment of the trial court are modified, and the case is remanded to the trial court, the weight to be given to such evidence being left entirely to the trial court. Judgment will be rendered accordingly.